1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **SOUTHERN DISTRICT OF CALIFORNIA**
10

11  QIANG WANG,                                    CASE NO. 07CV0165 BEN (CAB)

12                              Plaintiff,         ORDER REMANDING
                                                   ADJUDICATION OF
13          v.                                     NATURALIZATION APPLICATION

14  ALBERTO GONZALES, Attorney General
    of the United States;  MICHAEL
15  CHERTOFF, Secretary of U.S. Department
    of Homeland Security; EMILIO
16  GONZALES, Director of U.S. Citizenship
    and Immigration Services; and ROBERT S.
17  MUELLER; Director of Federal Bureau of
    Investigation,

18                              Defendants.

19

20          Plaintiff Qiang Wang ("Plaintiff") filed this action pursuant to 8 U.S.C. § 1447(b) for a

21  declaratory judgment of naturalization.  In addition, Plaintiff requests fees under the Equal Access

22  to Justice Act.  Presently before the Court are defendants Alberto Gonzales, Attorney General of

23  the United States ("USA"), Michael Chertoff, Secretary of the Department of Homeland Security

24  ("DHS"), Robert Mueller, Director of the Federal Bureau of Investigation ("FBI"), and Emilio

25  Gonzalez, Director of United States Citizen and Immigration Services ("USCIS") (collectively

26  "Defendants") who seek a motion to remand this case to USCIS. (Doc. No. 4.)  For the reasons

27  discussed below, the Court declines to adjudicate Plaintiff's application and **REMANDS** his

28  naturalization proceedings to USCIS.

## I.   BACKGROUND

Plaintiff is a native and citizen of the Peoples Republic of China and a lawful permanent resident of the United States.  Plaintiff filed an application for naturalization to United States citizenship on June 27, 2005.  USCIS requested the FBI conduct a name check for the Plaintiff on July 13, 2005.  On December 2, 2005, Plaintiff was interviewed by USCIS.  Plaintiff's interview was conducted prior to waiting for the FBI name check results contrary to the statutory scheme. The name check results are still pending to this date.  On January 26, 2007, Plaintiff filed this action pursuant to 8 U.S.C. § 1447(b) seeking a declaratory judgment of naturalization and for fees under the Equal Access to Justice Act .  (Doc. No. 1.)  On March 28, 2007, Defendants filed a motion to remand this matter to USCIS.  (Doc. No. 4.)  No opposition was filed by the Plaintiff.

## II.   DISCUSSION

The FBI and USCIS are charged with investigating and adjudicating naturalization applications.  *See* 8 U.S.C. § 1446(a).  In 1997, Congress mandated that the FBI investigate every applicant for naturalization and that USCIS await completion of those investigations prior to rendering a decision with respect to any applicant.  *See* Pub. L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448.  Specifically, beginning in fiscal year 1998 and continuing thereafter, USCIS is prohibited from using any of the funds appropriated or available to it unless the USCIS has received confirmation from the FBI that a full criminal background check has been completed. *See id.*  In response, USCIS adopted a regulation requiring the initial examination for an applicant's naturalization application occur *only after* USCIS has received a definitive response from the FBI that a full criminal background check has been completed on that applicant.  *See* 8 C.F.R. § 335.2(b).  Under this regulation, the USCIS cannot adjudicate a petitioner's naturalization application until the FBI completes its record review.

Generally, a lawful permanent resident alien is eligible for naturalization as a United States citizen if he or she (1) satisfies a five-year statutory residency requirement; (2) has resided continuously in the United States from the date of his or her application to the time of his or her admission as a citizen; and (3) is of good moral character. *See* 8 U.S.C. § 1427(a).  USCIS must

make a determination on a naturalization application within 120 days after it conducts a naturalization examination.  *See* 8 U.S.C. § 1447(b).  If it fails to do so, the applicant may apply to the federal district court for a hearing on the matter.  *Id.*  The district court assumes jurisdiction over the matter and may either: 1) determine the matter by making a naturalization decision;  or 2) remand the matter, with appropriate instructions, to USCIS.  *Id.*  *See United States v. Hovsepian*, 359 F.3d 1144, 1160 (9th Cir. 2004).

By proceeding with Plaintiff's initial examination before receiving the results of the required FBI investigations, USCIS prematurely triggered the 120-day decision period for Plaintiff and others similarly situated.  Realizing the dilemma this had caused (and to avoid this  problem in the future), USCIS has since realigned its interview process with the timing dictated by statute -- namely, to await completion of the FBI background investigations before USCIS conducts the initial interviews of naturalization applicants.  Despite this correction, however, a number of applicants, including Plaintiff, remain among those whose initial examinations occurred prior to the proper adherence of the statutory scheme.  Since Plaintiff was interviewed by USCIS on December 2, 2005, and 120-days have since elapsed, it is undisputed that this Court has jurisdiction over this matter.  *See id.* at 1164 (holding Section 1447(b) allows the district court to exercise jurisdiction over naturalization applications where USCIS fails to act within 120 days if the applicant properly invokes the court's authority).

As discussed above, the Court has two options once jurisdiction is established.  The Court may hold a hearing and decide the matter outright, or remand the matter with appropriate instructions to USCIS.  *See* 8 U.S.C. § 1447(b).  Given the practical considerations involved and the noted absence of any FBI investigative results for the Plaintiff, the Court chooses the second option.  When the delay in a citizenship decision results from the FBI's investigative process, the Court finds it inappropriate to make a determination before that information is known unless there are extreme, abusive, or egregious circumstances, which are clearly not present here.  *See Khelifa v. Chertoff*, 433 F.Supp 2d 836, 843 (E.D. Mich. 2006) (noting that courts have been unwilling to conduct their own investigations into an applicant's criminal background, or to proceed on the merits without the benefit of the information concerning the applicant's background or security

1    risk, where they can instead remand the matter with instructions to USCIS for determination).

2           Generally speaking, a court should remand a case to an agency for decision on matters that

3    are  primarily placed in the agency's hands by statute.  *See I.N.S. v. Ventura,* 537 U.S. 12, 16

4    (2002).  In *Ventura*, the Supreme Court cited a number of considerations in support of this

5    proposition:

6           The agency can bring its expertise to bear upon the matter;  it can evaluate the
            evidence;  it can make an initial determination;  and, in doing so, it can, through
7           informed discussion and analysis, help a court later determine whether its decision
            exceeds the leeway that the law provides.
8

9    537 U.S. at 17.  The executive branch is accorded great deference in immigration matters as

10   evidenced by the statutory and regulatory schemes established for processing citizenship

11   applications.  Obviously, the federal law enforcement agencies which oversee the investigative

12   process on behalf of USCIS have a great deal more expertise than the Court in both: (1) identifying

13   the potentially problematic information uncovered in a background check;  and (2) following up

14   on such information to determine whether it truly reflects legitimate national security or public

15   safety concerns, or instead is merely a "false positive."  *See Khelifa*, 433 F.Supp.2d at 844.

16          Only the FBI and USCIS are in a position to know what resources are available to conduct

17   the background checks and whether an expedited background check is feasible or efficient in any

18   particular case.  *See Shalabi v. Gonzales,* 2006 WL 3032413 at *5 (E.D. Mo. Oct. 23, 2006).

19   USCIS is prohibited by statute from approving Plaintiff's application for naturalization without the

20   information processed by the FBI and it lacks the authority to expedite the FBI investigation.  The

21   Court too is faced with the same limitations in granting Plaintiff's requested  relief.  Plaintiff's

22   delay is a result of the post-1997 Congressional mandate that each applicant for citizenship be

23   subject to a complete FBI criminal background investigation.  *See El-Daour v. Chertoff*, 417 F.

24   Supp. 2d 679, 684 (W.D. Pa. 2005).

25          For these reasons, the Court declines imposing a definitive deadline for either the

26   completion of the FBI checks or the naturalization decision given the limitations of the agencies

27   involved.

28          Lastly, while not specifically addressed in Defendants' motion, Plaintiff also requests fees

pursuant to the Equal Access to Justice Act ("EAJA").  The EAJA provides that prevailing parties in certain adversarial proceedings against the United States may recover attorney's fees from the United States.  *See* 5 U.S.C. § 504;  28 U.S.C. § 2412.  Title 5 U.S.C. § 504(a)(1) provides:

> An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.  Whether or not the position of the agency was substantially justified shall be determined on the basis of the administrative record, as a whole, which is made in the adversary adjudication for which fees and other expenses are sought.

5 U.S.C. § 504(a)(1).  Here, Plaintiff would not be entitled to these fees because, at this time, Plaintiff is not the prevailing party.

Additionally, the fees and expenses allowed under Section 504(a)(1) are generally for adjudications made under the Administrative Procedure Act ("APA") that are subject to or governed by 5 U.S.C. § 554.  *See e.g, Collord v. U.S. Dept. of Interior*, 154 F.3d 933, 936 (9th Cir. 1998).  Generally, immigration proceedings are not governed by the APA.  *See Ardestani v. INS*, 502 U.S. 129, 135 (1991).  Accordingly, Plaintiff would not be entitled to the fees and costs arising from Plaintiff's naturalization application.  Finally, nothing in 5 U.S.C. § 504, nor any other provision of the EAJA, provides a basis for this court's jurisdiction over this action.

Therefore, for the reasons discussed above, this matter is **REMANDED** to USCIS, with instructions that USCIS adjudicate Plaintiff's naturalization without unreasonable delay upon receiving the results of the pending FBI investigation.

**IT IS SO ORDERED.**

DATED:  April 30, 2007

_____
Hon. Roger T. Benitez
United States District Judge